1

2

3

4

5

6

7

8

9

10

11

12

13

14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN MABREY,

            Plaintiff,

      v.

WIZARD FISHERIES, INC., *et al.*,

            Defendants.

Case No.  C05-1499L

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT

15

16

## I.  INTRODUCTION

17

18

19

20

21

22

This matter comes before the Court on a motion for partial summary judgment filed by defendant Wizard Fisheries, Inc. ("Wizard") (Dkt. #57).  Wizard seeks summary judgment related to two of plaintiff John Mabrey's alleged injuries: 1) a shoulder injury sustained when he fell down a ladder in the engine room, and 2) a knee injury sustained when his leg fell through a deck board and later exacerbated when he stepped through a hatch cover that was not properly secured.

23

For the reasons set forth below, the Court denies the motion.

24

## II.  DISCUSSION

25

**A.     Background Facts.**

26

During the relevant time, plaintiff worked as an engineer and deck hand.  As an engineer,

27

28

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1

1  plaintiff was responsible for keeping the engine room clean and performing repairs.  Declaration

2  of John Lenker, (Dkt. #60) ("Lenker Decl."), Ex. 3 (Jorgensen Dep. at p. 23).  Plaintiff alleges

3  that on January 8, 2004, he was injured during his employment while descending stairs on the

4  F/V Wizard.  He grabbed onto the surrounding coaming while trying to stop his fall, and

5  dislocated his shoulder.  Plaintiff alleges that just before his accident, crew members hung up

6  their gear in the engine room across from the stairs.  The gear "was very slimy with bait juices,

7  which were running down the stairs."  Lenker Decl., Ex. 8.  Plaintiff and the vessel's captain

8  had previously instructed the crew members to hang up their gear in the gear room, but the gear

9  did not dry well in that room.  Water also ran into the room as a result of broken hatch doors.

10      In July 2005, Mabrey reported a problem with his knee and alleged that it was related to

11  an injury on the vessel.  Plaintiff was moving a crab sorting table with two other crew members

12  when a deck board broke under him.  Plaintiff alleges that he further injured his knee when he

13  stepped into a hatch that was not properly secured.  Plaintiff filed his complaint with this Court

14  on August 31, 2005 alleging unseaworthiness, negligence, and a violation of the Jones Act.

15  **B.      Summary Judgment Standard.**

16      On a motion for summary judgment, the Court must "view the evidence in the light most

17  favorable to the nonmoving party and determine whether there are any genuine issues of material

18  fact."  Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004).  All reasonable inferences

19  supported by the evidence are to be drawn in favor of the nonmoving party.  See Villiarimo v.

20  Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "[I]f a rational trier of fact might

21  resolve the issues in favor of the nonmoving party, summary judgment must be denied."  T.W.

22  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

23  **C.      Analysis.**

24      **1.      Failure to Plead Subsequent Knee Injury.**

25      As an initial matter, Wizard argues that Mabrey should be barred from alleging that he re-

26  injured his knee in November 2003 by stepping through a defective hatch cover because he has

27

28  ORDER DENYING MOTION FOR
    PARTIAL SUMMARY JUDGMENT - 2

1   never pled a claim related to the second knee injury.  Wizard notes that although Mabrey has

2   amended his complaint twice, he has never pled the claim and his second amended complaint is

3   devoid of any facts or allegations related to the alleged second knee injury.  However, Wizard

4   had notice of the claim as early as March 2006, when Mabrey alleged it in response to

5   interrogatories and later during his deposition.  Although plaintiff should have pled the incident,

6   the disclosures were sufficient to provide Wizard with notice of the claim.  Furthermore, even if

7   plaintiff failed to plead the subsequent injury, he pled the underlying claim of a knee injury

8   related to Jones Act negligence and unseaworthiness, giving Wizard sufficient notice of the

9   claim.  Accordingly, the Court will not dismiss Mabrey's claim regarding his second knee issue

10  on this basis.

11          **2.      Evidentiary Issues.**

12          Plaintiff requests that the Court strike the Declaration of Captain Erling Jacobsen dated

13  April 11, 2007 and filed in support of Wizard's motion.  Plaintiff argues that Captain Jacobsen

14  has never been disclosed as a potential expert witness in accordance with Federal Rule of Civil

15  Procedure 26.  Wizard did not respond to this argument.  Accordingly, because Wizard did not

16  disclose Captain Jacobsen as an expert witness, the Court did not consider his declaration.

17          Wizard argues that pursuant to Federal Rule of Evidence 407 the Court should not

18  consider evidence of subsequent remedial measures, including the application of nonskid coating

19  on the stairs and using exclusively apitong wood for the deck.  Although plaintiff argues that the

20  evidence can be used for impeachment, admitting the evidence for that purpose in this

21  circumstance would swallow the rule.  Plaintiff argues that the rule does not bar evidence of

22  measures taken by a third party, which includes Captain Colburn, who subsequently purchased

23  the vessel.  However, because Captain Colburn owns the vessel and the vessel is a defendant in

24  this action, he is not a third party as contemplated by the rule.  Accordingly, the Court did not

25  consider evidence of subsequent remedial measures.

26          Plaintiff filed a sur-reply to strike portions of the Declaration of Eli Bjornoy filed with

27

28  ORDER DENYING MOTION FOR
    PARTIAL SUMMARY JUDGMENT - 3

1  Wizard's reply.  Reply Declaration of John Lenker, (Dkt. #64) ("Lenker Reply Decl."), Ex. 6.

2  The Court need not rule on that issue at this time because even if that declaration is considered,

3  genuine issues of material fact remain.

4        Defendant filed a sur-reply requesting that the Court strike the declaration of Travis

5  Laughlin.  Plaintiff filed the declaration on May 21, 2007, long after it filed its April 30, 2007

6  response to the motion and well after the May 4, 2007 noting date.  Plaintiff offered no

7  explanation for the late filing,[1] and in fact, the declaration is signed and dated on April 7, 2007.

8  The late filing deprived defendant of an opportunity to respond to the declaration.  Accordingly,

9  the Court did not consider the Laughlin declaration.

10       **3.       Primary Duty Doctrine.**

11       Wizard alleges that the primary duty doctrine bars both plaintiff's Jones Act and

12  unseaworthiness claims for injuries to his shoulder and knee.  Under the primary duty rule, "a

13  seaman-employee may not recover from his employer for injuries caused by his own failure to

14  perform a duty imposed on him by his employment."  Bernard v. Maersk Lines, Ltd., 22 F.3d

15  903, 905 (9th Cir. 1994) (internal citation and quotation omitted).  As the Ninth Circuit

16  explained in Bernard,

17          This result turns really not upon any question of 'proximate cause,' 'assumption of risk'
            or 'contributory negligence,' but rather upon the employer's independent right to recover
18          against the employee for the non-performance of a duty resulting in damage to the
            employer, which in effect offsets the employee's right to recover against the employer for
19          failure to provide a safe place to work. . . .  In applying the "primary duty" rule, the
            important thing . . . is to distinguish between the duty to avoid contributory negligence,
20          which the law imposes upon the injured person, regardless of any conscious assumption
            of a duty towards the wrongdoer, and a duty which the injured person has consciously
21          assumed as a term of his employment. . . . Only the second is a bar to any recovery under
            the Jones Act.

22  Id. at 905-06 (internal citations and quotations omitted).  The Bernard court also described three

23  principles limiting the primary duty doctrine:

24

25

26        [1] Plaintiff's counsel states that he filed an unsigned copy of the declaration as Exhibit 7 to
      his previously filed declaration, which is incorrect.

27

28  ORDER DENYING MOTION FOR
    PARTIAL SUMMARY JUDGMENT - 4

1
2
3
4

> First, the "primary duty" rule will not bar a claim of injury arising from the breach of a duty that the plaintiff did not consciously assume as a term of his employment. Second, the rule does not apply where a seaman is injured by a dangerous condition that he did not create and, in the proper exercise of his employment duties, could not have controlled or eliminated. Third, the rule applies only to a knowing violation of a duty consciously assumed as a term of employment. It does not apply to a momentary lapse of care by an otherwise careful seaman.

5   Id. at 907.

6       Regarding plaintiff's shoulder injury, it is undisputed that he had the primary duty of

7   cleaning the engine room, including the stairs. Plaintiff argues that the stairs should have been

8   painted with non-skid paint. The primary duty rule bars that assertion, however, because he was

9   responsible for and painted the stairs. Lenker Reply Decl., Ex. 1 (Mabrey Dep. at pp. 119-120);

10  id., Ex. 2 (Jorgenson Dep. at p. 61). Plaintiff alleges that even though it was his responsibility to

11  clean the stairs, he could not have kept them clean and dry at the time of his injury because the

12  crew hung wet clothes above the stairs. They did so because the clothes would not dry in the

13  gear room, which was too cold, and the situation could have been remedied with a heater in the

14  gear room. However, one of the owners explained, without contradiction, that plaintiff "could

15  have put a heater in there any time he wanted, he was authorized to do anything like that."

16  Lenker Reply Decl., Ex. 2 (Jorgenson Dep. at pp. 52-53). Similarly, Mabrey testified during his

17  deposition that "taking care of the engine room, all aspects" was his responsibility. Lenker

18  Reply Decl., Ex. 1 (Mabrey Dep. at p. 22). Although plaintiff states in discovery responses that

19  he "requested a heater" from the captain and an owner, his deposition testimony and declaration

20  are conspicuously devoid of any denial that he possessed the authority to procure the heater

21  himself. Lenker Decl., Ex. 8 at p. 4. The lack of such a statement is telling in light of Wizard's

22  arguments and evidence on that point. Plaintiff also had knowledge of the allegedly unsafe

23  condition created by the location of the wet gear prior to the incident but failed to remedy it.

24  See, e.g., Reinhart v. United States, 457 F.2d 151, 154 (9th Cir. 1972). The primary duty rule

25  therefore bars plaintiff's claim based on the paint and heater issues.

26      However, plaintiff argues that the presence of the gear hooks above the stairs encouraged

27

28  ORDER DENYING MOTION FOR
    PARTIAL SUMMARY JUDGMENT - 5

1   the crew to hang their wet gear there.[2]  Defendant does not argue that plaintiff was responsible

2   for installing or removing the hooks, and the evidence does not address that issue.  Also,

3   plaintiff did not construct or design the stairs.  Plaintiff's experts have opined that the design of

4   the stairs, including the lack of non-skid diamond plate and appropriate treads, was a

5   contributing cause of the accident.  Declaration of Richard Gill, (Dkt. #61-8) ("Gill Decl.") at ¶¶

6   4, 8; Declaration of Captain Charles Jacobsen at ¶ 29.  Defendant does not argue, and there is no

7   evidence to show that plaintiff's job duties included designing or constructing the stairs or

8   inspecting it for such defects.  Accordingly, the Court will not conclude as a matter of law that

9   the primary duty doctrine bars his shoulder injury claim.

10          Wizard also alleges that the primary duty rule bars plaintiff's claim based on the two

11  injuries to his knee.  Wizard argues that as deck boss, plaintiff was responsible for inspecting

12  and maintaining the deck boards and ensuring that the hatch was secured.  However, the record

13  shows at least an ambiguity regarding whether plaintiff was the deck boss when he was injured.

14  Instead, he testified during his deposition that he was deck boss for only two years beginning in

15  1995.  Mabrey Dep. at p. 21.  Although Mabrey repaired or replaced decks boards when they

16  broke, there is no evidence that, during the relevant time, he was responsible for proactively

17  maintaining the deck.  Id. at p. 39.  Accordingly, Wizard is not entitled to summary judgment

18  based on the primary duty rule.

19          **4.      Jones Act Negligence.**

20          Under the Jones Act, the basis for a ship owner's liability is grounded in negligence; the

21  mere fact of injury will not suffice.  The quantum of evidence necessary to support a finding of

22  Jones Act negligence is less than that required for common law negligence: "a seaman must

23  _____

24          [2] Wizard argues that the timing of the incident means that the crew could not have been
    engaged in any activities prior to the accident that would have resulted in hanging wet/oily gear
25  above the stairs.  Plaintiff has provided sufficient evidence on that issue for purposes of
26  summary judgment.  Declaration of John Mabrey, (Dkt. #61-2) ("Mabrey Decl.") at ¶ 12;
    Mabrey Dep. at p. 64.
27

28  ORDER DENYING MOTION FOR
    PARTIAL SUMMARY JUDGMENT - 6

1  demonstrate only that his employer's negligence played any part, even the slightest, in producing

2  his injury" to sustain a finding of liability.  Ribitzki v. Canmar Reading & Bates, Ltd. P'ship,

3  111 F.3d 658, 662 n.3 (9th Cir. 1997).  Nevertheless, plaintiff has the burden of establishing all

4  four elements of a Jones Act claim, namely duty, breach, notice, and causation.  Havens v. F/T

5  POLAR MIST, 996 F.2d 215, 218 (9th Cir. 1993).  An employer is liable if it or its agents knew

6  or should have known of the dangerous condition but failed to correct it.  See, e.g., Ribitzki, 111

7  F.3d at 663.

8      In this case, Wizard argues that it lacked notice that the ladder was slippery on the day of

9  plaintiff's fall.  However, as set forth above, plaintiff's experts have opined that the stairs lacked

10  non-skid diamond plate and proper treads.  Furthermore, plaintiff has argued that the presence of

11  the gear hooks above the stairs encouraged the crew to hang their wet gear there.  The captain

12  was aware of that practice.  Accordingly, Wizard is not entitled to summary judgment regarding

13  plaintiff's shoulder injury.

14      As for plaintiff's knee injury, Wizard argues that plaintiff has presented no evidence that

15  it knew that the deckboard was damaged.  However, Captain Charles Jacobsen has opined that

16  the board that broke appears to have been Douglas Fir rather than apitong, that fir is a softwood

17  and less "hardy," and that using the fir board in that location was "an unsafe choice."

18  Declaration of Charles Jacobsen, (Dkt. #61-10) ("Jacobsen Decl.") at ¶¶ 9, 11, 14.  Captain

19  Jacobsen testified that "the damaged board should have been identified and replaced" by the

20  captain or first mate prior to plaintiff's injury.  Id. at ¶¶ 17, 20; id. at ¶ 18 (explaining that "a

21  deck should be inspected at regular and frequent intervals" to ensure the safe condition of the

22  deck).  Finally, plaintiff alleges that he informed the captain and owners, prior to his accident,

23  that the hatch covers were old, cracked, worn, and needed to be replaced.  Mabrey Decl. at ¶ 8.

24  These statements are sufficient to create an issue of fact.

25      **5.    Unseaworthiness.**

26      A vessel is unseaworthy if the ship, its appurtenances and equipment, or its crew is not

27

28  ORDER DENYING MOTION FOR
   PARTIAL SUMMARY JUDGMENT - 7

1   reasonably fit for its intended use.  See, e.g., Usner v. Luckenbach Overseas Corp., 400 U.S.

2   494, 499 (1971).  Although the shipowner's duty to provide a seaworthy vessel is absolute (*i.e.*,

3   actual knowledge, constructive knowledge, or negligence need not be proven), the duty does not

4   require that the shipowner provide an accident-free ship, just one that is reasonably fit for its

5   intended service.  See, e.g., Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550 (1960).  To

6   establish a claim for unseaworthiness, a seaman must establish: (1) the warranty of

7   seaworthiness extended to him and his duties; (2) his injury was caused by a piece of the ship's

8   equipment or an appurtenant appliance; (3) the equipment used was not reasonably fit for its

9   intended use; and (4) the unseaworthy condition proximately caused his injuries.  Ribitzki, 111

10  F.3d at 664.

11        Wizard makes two arguments regarding plaintiff's shoulder injury.  First, it notes that its

12  expert has opined that the ladder provided reasonable slip resistance, tread size and spacing.

13  Lenker Decl., Ex. 6.  However, as set forth above, plaintiff's experts have opined that the ladder

14  was not reasonably safe for its intended use and that Wizard created that condition.  Gill Decl. at

15  ¶¶ 4, 5, 8, 9, 11; see also Jacobsen Decl. at ¶ 29.  Second, Wizard argues that plaintiff cannot

16  satisfy his burden on causation because his injuries were exclusively caused by his own

17  negligence in descending the ladder facing away from it.  Plaintiff, however, has stated that he

18  was not facing away from the ladder but turned to the side.  Furthermore, Wizard has not shown,

19  for purposes of summary judgment, that it was "obvious" that a person should face this type of

20  ladder when descending.[3]

21        Regarding the decking, Wizard argues that the evidence does not show that the use of

22  Douglas Fir rather than apitong created an unseaworthy condition.  Even if the use of fir alone

23  was not unsafe, plaintiff has also alleged and provided evidence to show that other conditions

24

25        [3] Wizard relies on an opinion, written after a trial and involving a different type of ladder.

26  Cf. Johnson v. Arctic Storm, Inc., No. C01-1353RSL (W.D. Wash. 2003) (finding, after a trial,
    that it was obvious that an individual should descend a vertical ladder facing it).

27

28  ORDER DENYING MOTION FOR
    PARTIAL SUMMARY JUDGMENT - 8

1    rendered the deck unseaworthy, including the fact that the board broke under normal working

2    conditions, fir was used even though the board was located in a high use, high impact area, and

3    the deck was not regularly inspected or maintained.  In addition, Wizard does not argue that

4    summary judgment is warranted on plaintiff's claim for unseaworthiness related to the hatch.

5    Plaintiff has presented evidence that the hatch was not fit for its intended purpose because it was

6    damaged and gave way when he simply stepped on it.  These facts are sufficient to raise an issue

7    of fact regarding unseaworthiness.

## III.  CONCLUSION

9        For the foregoing reasons, the Court DENIES Wizard's motion for partial summary

10   judgment.  (Dkt. #57).

11

12       DATED this 5th day of June, 2007.

13

14

15                                             Robert S. Lasnik
                                               United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER DENYING MOTION FOR
     PARTIAL SUMMARY JUDGMENT - 9