UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                   )
JOHN MABREY,                       )    No. C05-1499RSL
                                   )
                Plaintiff,         )    ORDER DENYING PLAINTIFF'S
        v.                         )    MOTION FOR PARTIAL NEW TRIAL
                                   )    AND ORDER GRANTING
WIZARD FISHERIES, INC., *et al.*,  )    PLAINTIFF'S MOTION TO CORRECT
                                   )    JUDGMENT
                Defendants.        )
_____)

## I. INTRODUCTION

This matter comes before the Court on "Plaintiff's Motion for (1) Partial New Trial; (2) Alteration or Amendment of Judgment; and (3) for Relief from Judgment" (Dkt. #135). In his motion, plaintiff "requests that the Court (1) order a new trial limited to the issue of Plaintiff's impaired earning capacity claim and (2) alter or amend the judgment (or order relief from such judgment) to clarify Wizard is required to pay cure for Plaintiff's pain management treatment and ongoing mental health care as part of its continuing obligation to pay cure for Plaintiff's shoulder injury." Motion at 1. For the reasons set forth below, the Court denies plaintiff's motion for a new trial and grants plaintiff's motion to correct the judgment to clarify that defendants are required to pay for plaintiff's pain management treatment and ongoing mental health care as related to his shoulder injury until plaintiff's treating physicians determine

ORDER DENYING MOTION FOR PARTIAL
NEW TRIAL AND ORDER GRANTING MOTION
TO CORRECT JUDGMENT

plaintiff has reached maximum medical cure for his shoulder injury.

## II.  DISCUSSION

### A.     Motion for New Trial

Plaintiff moves for a partial new trial under Fed. R. Civ. P. 59(a) on the issue of determining plaintiff's impaired earning capacity.  This case was tried to the Court, therefore plaintiff's motion is governed by Rule 59(a)(1)(B), which provides:  "Grounds for New Trial.  The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: . . . (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."

In Brown v. Wright, 558 F.2d 708, 710 (9th Cir. 1978), the Ninth Circuit announced "[t]here are three grounds for granting new trials in court-tried actions . . . (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence."  See Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 n.4 (9th Cir. 2007) ("The District Court applied the standard from Brown v. Wright . . ., a bench trial case establishing the standard under Fed. R. Civ. P. 59[.]").

In his motion, plaintiff challenges Finding of Fact 13 in the Court's Memorandum of Decision, which states:

> The Court finds that while plaintiff has lost the ability to work at sea in the fishing industry, despite his shoulder condition, plaintiff retains the capacity to work and is currently employed.  Defendant's expert, Mr. William Skilling, credibly testified that by 2011, plaintiff could earn approximately $43,000 a year in his current occupation as a reservations clerk, net of taxes and discounted to present value.  By 2011, Mr. Skilling testified that plaintiff's income as a reservations clerk would be equivalent to, or exceed the income he received as an engineer aboard the WIZARD, given the additional benefits he would receive as a clerk, the costs and taxes plaintiff incurred in his work on the WIZARD, and potential reductions to his future income because of changes in the crab fishing industry.  Taking these factors into account, and discounting the loss of earning capacity to present value, Mr. Skilling's testimony indicated that plaintiff's future lost earnings totaled approximately **$17,000**.

See Dkt. #133 at 5.  After reviewing Finding of Fact 13 and the Memorandum of Decision, the

ORDER DENYING MOTION FOR PARTIAL
NEW TRIAL AND ORDER GRANTING MOTION
TO CORRECT JUDGMENT

Court concludes that there is no "manifest error of fact" in this finding or "manifest error of law" related to the finding and therefore a new trial on the issue of plaintiff's impaired earning capacity is not warranted.

Plaintiff challenges Finding of Fact 13 because he contends that "Mr. Skilling's testimony—the sole evidence actually introduced—lacked a reasonable basis." Motion at 5. As emphasized in Finding of Fact 13, however, the Court found Mr. Skilling's testimony credible.

At trial, William Skilling testified as a qualified vocational expert. See Dkt. #150, Ex. A (Transcript of Proceedings) at 4. Plaintiff did not object to Mr. Skilling's qualification as a expert. Id. at 4:15. In forming his opinions, Mr. Skilling reviewed virtually all of plaintiff's medical and employment records, tax return information, deposition transcripts, independent medical examination reports, and the reports of defendants' other experts including Steven Hughes and William Partin. Id. at 5. At trial, Mr. Skilling reasonably opined that by 2011, plaintiff could earn $43,420 in San Diego as a reservation clerk. See Dkt. #150, Ex. A (Transcript of Proceedings) at 8 ("Wage surveys from the Department of Labor Bureau of Labor state that in San Diego reservation clerks earn up to $43,420 per year at the 90th percentile and 10 percent of all reservation clerks actually earn more than that amount); 14 ("And, again, at the 90th percentile, which I believe he can achieve within 5 years, the wage is $43,420."); see also Ex. 535. Plaintiff failed to successfully challenge this opinion on cross-examination. See id. at 16:10-17:19 (failing to challenge Mr. Skilling's cross-examination testimony that "I simply believe that, based upon everything I know about Mr. Mabrey and the level of skill required in this occupation, he could achieve that 90th percentile within five years on a reasonable basis."). Based on this opinion testimony, and the other evidence at trial, including the fact that plaintiff's net income from his work on the Wizard in 2005 was approximately $43,466 and testimony regarding future changes in the crab fishing industry, the Court found that by 2011 plaintiff's income as a reservation clerk would be equivalent to or exceed the income he received from the

ORDER DENYING MOTION FOR PARTIAL
NEW TRIAL AND ORDER GRANTING MOTION
TO CORRECT JUDGMENT

1  Wizard.  See Dkt. #133 at Finding of Fact 12 (finding that plaintiff's lost wages from 2005
2  totaled $43,466 based on the testimony of Steven Hughes); Ex. 580.  As stated in Finding of
3  Fact 13, the Court also discounted to present value the disparity between plaintiff's projected
4  wage as a reservation clerk and his income from the crab fishing industry until they reached
5  parity in 2011 resulting in a lost earning capacity of $17,000.  See Monessen Sw. R.R. Co. v.
6  Morgan, 486 U.S. 330, 341 (1988) (stating that the Supreme Court has "repeatedly indicated that
7  the present value calculation is to be made by the 'trier of fact.' Of course because Pfiefer was
8  tried to the bench, the 'trier of fact' in that case was a judge rather than a jury.") (internal
9  citation omitted).

10  Plaintiff also seeks a new trial because he claims that the methodology employed by Mr.
11 Skilling[1] was based on the work of Mr. Partin, who did not testify at trial.  See Motion at 2 ("Mr.
12 Skilling's analysis of this issue [future lost earnings] wholly relied [sic] [on] calculations
13 performed by William Partin, who was excluded from testifying at trial as an untimely-disclosed
14 witness.") (citing Ex. 573, Mr. Partin's report).[2]  Plaintiff's request for a new trial on this basis
15 fails first and foremost because the Court did not rely on Mr. Partin's report in entering the
16 Court's findings of fact.  See Dkt. #133.

---

[1] Plaintiff incorrectly suggests in his motion that the Court accepted Mr. Skilling's testimony exclusively and without exception.  At trial and in his report, Mr. Skilling opined that "Mr. Mabrey's total economic loss when expressed in net present value in 2007 ranges from $118,141 to $135,227, depending on the vocational option that Mr. Mabrey chooses for himself in the future.") (emphasis added). Dkt. #150, Ex. A at 13:22-25; see Ex. 580 (Mr. Skilling's June 26, 2007 Rehabilitation Assessment Addendum).  In the Memorandum of Decision, however, the Court awarded plaintiff $167,212 in total economic losses—more than the amount calculated by Mr. Skilling—based on Mr. Hughes' testimony and Mr. Skilling's testimony concerning plaintiff's lost wages, both past and future, and the other evidence presented at trial.

[2] In his motion, plaintiff incorrectly cites Trial Exhibit 572 as Mr. Partin's report.  Mr. Partin's report is Exhibit 573.

ORDER DENYING MOTION FOR PARTIAL
NEW TRIAL AND ORDER GRANTING MOTION
TO CORRECT JUDGMENT

-4-

Second, as Mr. Partin's report expressly states, Mr. Partin relied on facts and data supplied by Mr. Skilling and Mr. Hughes (Natural Resources Consultants, Inc.) in tabulating mitigating wages and Mr. Hughes in tabulating future earning potential from crab fishing. See Ex. 573, Attachs. 4 & 6.

Third, to the extent Mr. Skilling relied on facts and data from Mr. Partin, the effect of this reliance must be viewed in the context of a bench trial. See 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2885, at 454 (2d ed. 1995) ("In nonjury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence."). Under Fed. R. Evid. 703, "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." To the extent Mr. Skilling relied on Mr. Partin's discount rate, this data is of a type reasonably relied upon by vocational experts in forming loss wage calculations, and given the context of a bench trial, the probative value of this information is substantially outweighed by its prejudicial value. See Turner v. Burlington N. Sante Fe R.R. Co., 338 F.3d 1058, 1061 (9th Cir. 2003) ("In December 2000, Rule 703 was amended and now requires a court to ask two questions when evaluating otherwise inadmissible evidence. The first question is whether the facts are of a type reasonably relied on by experts in a particular field. The second question is whether the probative value of the underlying data substantially outweighs its prejudicial effect.") (internal citation and quotation marks omitted); Dkt. #150, Ex. A. at 28:20-24.

Finally, although plaintiff in his post-trial motion contends that Mr. Skilling improperly relied on information supplied by Mr. Partin, at trial plaintiff failed to cross-examine Mr. Skilling on this subject. See id. at 14-29.

1   The Court is afforded a great amount of discretion in computing damages. See Howard v.
2   Crystal Cruises, Inc., 41 F.3d 527, 530 (9th Cir. 1994) ("We review the district court's
3   computation of damages following a bench trial for clear error."). For all the foregoing reasons,
4   the Court concludes that it did not commit a manifest error of fact or law in determining
5   plaintiff's future lost earnings under Fed. R. Civ. P. 59(a). Accordingly, the Court denies
6   plaintiff's request for a partial new trial.

**B.     Motion to Correct Judgment**

Plaintiff also moves to correct the judgment under Fed. R. 60(a) to clarify that defendants are required to pay cure for plaintiff's pain management treatment and ongoing mental health care as part of its continuing obligation to pay cure for plaintiff's shoulder injury. Rule 60(a) provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." "So long as the court's correction was intended to conform the judgment to the original intention of the court, the invocation of Rule 60(a) [i]s proper." Harman v. Harper, 7 F.3d 1455, 1457 (9th Cir. 1993).

In Finding of Fact 10, the Court found that "plaintiff is likely to continue to need medication, therapy, and possibly another shoulder surgery to remedy his shoulder condition." Dkt. #133 at 4. In the Conclusions of Law, the Court ordered "defendant to provide continuing maintenance and cure for plaintiff's shoulder injury until his treating physicians determine that plaintiff's shoulder has returned to health or attains a state from which it will not get any better." Id. at 8. Defendants make two arguments in opposition to payment of psychiatric care and pain management cure for plaintiff's shoulder injury.

First, defendants oppose mental health care because they assert that "plaintiff's depression lacked a sufficient nexus to his employment to obligate the WIZARD for cure related

ORDER DENYING MOTION FOR PARTIAL
NEW TRIAL AND ORDER GRANTING MOTION
TO CORRECT JUDGMENT

to his depression." Response at 8.  In order to promote broad coverage and to avoid uncertainties regarding the right to maintenance and cure, the Supreme Court has determined that if there are any ambiguities or doubts regarding a shipowner's liability, they must be resolved in favor of the seaman.  Vaughan v. N.J. Atkinson, 369 U.S. 527, 532 (1962); Farrell v. United States, 336 U.S. 511, 516 (1949).  The obligation to pay maintenance and cure continues until the seaman has reached "maximum cure," generally defined as a return to health or the attainment of a state from which he will not get any better.  See, e.g., Farrell, 336 U.S. at 517-519.

If defendants truly believed that plaintiff's psychiatric care was not their responsibility, they could have refused to pay cure for this item, especially since Dr. Wachsman did not perform plaintiff's psychiatric care until after litigation commenced and defendants in the past had refused cure payments for plaintiff's alleged carpel tunnel syndrome injury.  See Ex. 559; Wachsman Designated Perpetuation Dep. at Ex. 2, 5; see, e.g., Dkt. #45 (Defendants' Response to Plaintiff's Motion to Compel Payment of Cure); Dkt. #77 (Order Denying Motion to Compel Payment of Cure).

The Court found in this case that plaintiff's shoulder injury has not reached maximum cure, and in Finding of Fact 10, the Court found that treatment for the shoulder required "therapy," which the Court originally intended to cover psychiatric therapy.  Until plaintiff's shoulder injury reaches maximum medical cure, as determined by plaintiff's treating physicians, defendants are obligated to continue to pay cure for plaintiff's psychiatric care.

Second, defendants oppose continuing plaintiff's pain management treatment because they contend that it is "'palliative' and therefore not properly a cure obligation of Wizard." See Response at 9 (citing Baucom v. Sisco Stevedoring, LLC, 506 F. Supp. 2d 1064 (S.D. Ala. 2007).  "Courts have held that a shipowner is only responsible for treatment that is curative in

ORDER DENYING MOTION FOR PARTIAL
NEW TRIAL AND ORDER GRANTING MOTION
TO CORRECT JUDGMENT

nature, and not for medical care that is solely palliative such as the alleviation of pain and discomfort." In re RJF Int'l Corp., 334 F. Supp. 2d 109, 111 (D. R.I. 2004). However, courts have also recognized that the "boundary between improvement and palliation" is "fuzzy." In re RJF Int'l Corp., 354 F.3d 104, 107 (1st Cir. 2004).

Defendants here are trying "to distinguish between curative treatment still possible and accompanying palliative measures" and arguing "that the cost of palliation offered in the course of treatment should be segregated and excluded from the [defendants'] obligation." Id. at 107. In response to this argument, the First Circuit has noted that "[s]ome segregation would be silly – imagine excluding pain medicine from the setting of a bone – but perhaps in some settings a distinction might be drawn." Id. The First Circuit has also stated that "treatment that is 'more than simply palliative, and would improve [the seaman's] medical condition . . . is enough to support an award of maintenance and cure in aid of permanent improvement short of a complete cure." Whitman v. Miles, 387 F.3d 68, 72 (1st Cir. 2004) (quoting In re RJF Int'l Corp., 354 F.3d at 107) (alteration in original).

In Finding of Fact 10, the Court found that "plaintiff is likely to continue to need medication . . . to remedy his shoulder condition." Dkt. #133 at 4. Implicit in this statement is the finding that medication for plaintiff's shoulder injury is more than palliative and would further the improvement of plaintiff's shoulder condition. Accordingly, the Court intended in its original judgment to cover plaintiff's pain medication for his shoulder as part of defendants' cure obligation.

### III. CONCLUSION

For all of the foregoing reasons, "Plaintiff's Motion for (1) Partial New Trial; (2) Alteration or Amendment of Judgment; and (3) for Relief from Judgment" (Dkt. #135) is DENIED IN PART AND GRANTED IN PART. Plaintiff's Motion for a partial new trial is

ORDER DENYING MOTION FOR PARTIAL
NEW TRIAL AND ORDER GRANTING MOTION
TO CORRECT JUDGMENT

DENIED. Plaintiff's motion to correct the judgment under Fed. R. Civ. P. 60(a) is GRANTED. Accordingly the Clerk of Court is directed to amend the judgment to clarify that defendants are required to pay for plaintiff's pain management treatment and ongoing mental health care as related to his shoulder injury until plaintiff's treating physicians determine plaintiff has reached maximum medical cure for his shoulder injury consistent with the terms of this order.

DATED this 8th day of January, 2008.

/s/ Robert S. Lasnik
Robert S. Lasnik
United States District Judge